UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
No. 19mj 03298 - Louis

UNITED STATES OF AMERICA

v.

UNDER SEAL

MARTIN BATISTA,
    a/k/a "El Barbero,"
    a/k/a "Sandy," and
LUIS MINIEL FIGUEREO CABRERA,
    a/k/a "Luisito,"

    Defendants.
_____/

## CRIMINAL COMPLAINT COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)? No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? No

Respectfully submitted,
ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

BY: _____
DANIEL CERVANTES
Florida Bar No. 40836
99 N. E. 4th Street
Miami, Florida 33132-2111
TEL (305) 961-9031
FAX (305) 530-7976
daniel.cervantes@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
|---|---|
| v. | ) |
| MARTIN BATISTA, a/k/a "El Barbero," a/k/a "Sandy," and | ) Case No.  19 mj 03298-Lavis |
| LUIS MINIEL FIGUEREO CABRERA, a/k/a "Luisito," | ) |
| *Defendant(s)* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) __February 9, 2016 to June 7, 2018__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to possess with intent to distribute controlled substances |

This criminal complaint is based on these facts:
Please see attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Det. Steven Corley, TFO ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Aug 13 2019

_____
*Judge's signature*

City and state: Miami, Florida          U.S. Magistrate Judge Lauren F. Louis
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Steven Corley, having been first duly sworn, do hereby depose and state as follows:

### I.   AGENT BACKGROUND AND INTRODUCTION

1.   I am a Detective with the Miami-Dade Police Department ("MDPD") and have been so employed for more than twenty (20) years. As a MDPD Detective, I have received training in, among other areas, narcotics and violent crimes investigation and have participated in investigations related to such crimes. In 2009, I became a Task Force Officer for the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). I am currently assigned to the ATF High Intensity Drug Trafficking Area ("HIDTA") Task Force. As part of my duties and responsibilities, I am authorized to conduct investigations into criminal violations of the laws of the United States, including narcotics offenses, such as conspiracy to possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 846, and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1). I am thus a "federal law enforcement officer" as defined by Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure.

2.   I have been personally involved in multiple investigations concerning the possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions and launder drug proceeds. During the course of these interdictions and investigations, I have seized cocaine, marijuana, heroin, and methamphetamines. I have also debriefed defendants, informants, and witnesses who had personal knowledge of major narcotics trafficking organizations. I have conducted physical surveillance, and have participated in multiple narcotics investigations that utilized court authorized interceptions of wire communications. As a result of my experience and training, I am familiar with the manner in

which various types of illegal drugs are cultivated, manufactured, smuggled, distributed, and diverted, as well as the various methods used by narcotics traffickers to finance drug transactions and launder drug proceeds. I am also familiar with some of the code that narcotics traffickers use when discussing narcotics transactions. I have received training in the preparation and execution of search warrants authorizing the search of physical locations, including private residences, for evidence of unlawful narcotics trafficking.

3. This affidavit is submitted in support of a criminal complaint charging that from on or about February 9, 2016, to June 7, 2018,

   i. MARTIN BATISTA, a/k/a "El Barbero," a/k/a "Sandy," and

   ii. LUIS MINIEL FIGUEREO CABRERA, a/k/a "Luisito,"

did knowingly and willfully combine, conspire, confederate, and agree with each other, with Osmel Torres, and with other persons known and unknown to the Grand Jury to possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1); all in violation of Title 21, United States Code, Section 846.

4. As a result of my personal participation in this investigation, as well as through information conveyed to me by witnesses and law enforcement officers, including but not limited to agents of the Federal Bureau of Investigations ("FBI") and ATF, as well as officers of the Miami-Dade Police Department, and City of Miami Police Department, I am familiar with the facts and circumstances of the investigation giving rise to the attached criminal complaint. Since I submit this affidavit for the limited purpose of establishing probable cause in support of the criminal complaint, I have not included in this affidavit each and every fact known to me or to other law enforcement officers surrounding this investigation. Rather, I have included only those

facts which I believe are necessary to establish probable cause in support of the attached criminal complaint.

## II. PROBABLE CAUSE

### a. Background Facts

5. As part of an on-going investigation, law enforcement identified Osmel TORRES and others as participants in drug trafficking activities. The investigation has involved the use of extensive surveillance, a fixed camera, confidential sources, subpoenas, cellular tracking warrants, and two federal court orders permitting the real-time interception of wire and electronic communications, among other investigative techniques.

6. Between January 11, 2018, and February 28, 2018, law enforcement made three controlled purchases from TORRES and his associates. Using that evidence, law enforcement obtained four federal wiretaps, and one extension of a wiretap.

7. On April 11, 2018, the Honorable Kathleen M. Williams, United States District Court Judge, Southern District of Florida, signed an order (18-WT-20005) permitting the interception of wire and electronic communications occurring over a cellular phone used by TORRES, telephone number 305-515-0780 (hereinafter TORRES-0780) and wire communications occurring over a cellular phone used by Jorge La Rosa BORDAS, telephone number 786-599-3743 (hereinafter BORDAS-3743). Interception began on April 13, 2018, and concluded on May 12, 2018.

8. On May 9, 2018, the Honorable Federico A. Moreno, United States District Court Judge, Southern District of Florida, signed an order (18-WT-20008) permitting the extended interception of wire and electronic communications occurring over TORRES-0780, initial interception of wire and electronic communications occurring over a second cellular phone used

by TORRES, telephone number 305-560-8251 (hereinafter TORRES-8251), and wire communications over a cellular phone used by GENNY INDIRA NIEVES REYES and TORRES, telephone number 786-470-9820 (hereinafter NIEVES-9820). Interception began on May 10, 2018, and concluded on June 7, 2018.

9. At the end of the wiretap interceptions, on June 7, 2018, law enforcement executed five search warrants. At TORRES and NIEVES REYES' residence, located at 2700 SW 27 Avenue, Penthouse 3, law enforcement found approximately 23 kilograms of cocaine, 17 of which was found underneath TORRES and NIEVES REYES' bed and 6 of which were found in a safe, an unloaded firearm in the nightstand next to TORRES and NIEVES REYES' bed; and over $134,000 in cash.

10. On June 14, 2018, a grand jury in Miami indicted TORRES, and 11 others in a drug conspiracy. *See* 18-20507-MGC. TORRES pleaded guilty. On March 20, 2019, TORRES was sentenced to 130 months of imprisonment.

### b. *Phone Numbers Used by Defendants*

11. During the conspiracy, BATISTA used at least two phone numbers, 786-286-6768 (BATISTA-6768) and 786-277-3214 (BATISTA-3214). BATISTA-6768 was registered to "Martin Batista" at "16425 SW 48th Terrace, Miami, Florida," which is the same address listed in Florida's Driver and Vehicle Information Database ("DAVID") for BATISTA.

12. BATISTA-3214 was registered to "FRANCISCO RODIGUEZ" at "14722 SW 72ND TER Miami, FL 33193." BATISTA was the user of BATISTA-3214 based on surveillance during simultaneous phone interceptions, TORRES' identification of BATISTA as the participant during the intercepted calls, and a comparison of the voices of the user for both BATISTA-6768 and BATISTA-3214.

4

13. CABRERA used 786-707-9596 (CABRERA-9596). This number is registered to "Cesar Rodriguez." On December 5, 2018, an undercover law enforcement officer entered CABRERA's place of business, a barbershop, and CABRERA provided the officer with a business card that listed the name, "LUIS FIGUEREO" and the CABRERA-9596 number. Additionally, TORRES has identified CABRERA as the user of CABRERA-9596.

### c. Roles

14. At times during the conspiracy, BATISTA and CABRERA worked as barbers at a barbershop in Miami, Florida. TORRES met BATISTA and CABRERA through the barbershop and began referring to BATISTA as "el Barbero" (which means "the barber" in Spanish) and to CABRERA as "Louisito."

15. During the relevant times of the conspiracy, BATISTA was a supplier of kilogram quantities of cocaine to TORRES.

16. CABRERA assisted BATISTA in delivering kilogram quantities of cocaine or receiving payment for the cocaine on behalf of BATISTA. At times, BATISTA and CABRERA would be together during the meetings with TORRES, but sometimes CABRERA would meet with TORRES without BATISTA. CABRERA would also sell cocaine directly to TORRES.

17. BATISTA began supplying large quantities of cocaine to TORRES after he (BATISTA) and CABRERA traveled to Cuba to meet with TORRES. Travel records for BATISTA and CABRERA corroborate that both of them flew to Havana, Cuba, on February 9, 2016, and returned on February 11, 2016.

### d. Interceptions Involving BATISTA

18. On May 24, 2018, at approximately 6:26 p.m., surveillance observed BATISTA, driving a Mercedes S550, arrive at TORRES' residence in Miami, Florida. At approximately 6:43 p.m., surveillance observed BATISTA drive away from TORRES' residence.

19. Continuing on May 24, 2018, at approximately 7:36 p.m., BATISTA-3214 called TORRES-8251 (Session ID: 1525). The following conversation ensued:

TORRES: Dude.

BATISTA: Yes.

TORRES: I'm calculating here and my wife is telling me, "Osmel, that was—If Tito is telling you that, it means that you wrote down—since you have been, for days, telling him that you have thirty thousand, thirty thousand, you wrote it down like you gave it to him, but you did not give it to him, because, [Stutters] you know he is not going to fuck you over thirty thousand bucks."

BATISTA: Of course. [Voices overlap]

TORRES: [Stutters] that's why and I've been racking my brain, if I have one hundred here in my notebook, how this is—It seems that was what happen dude, I was looking at my notebook and I saw one hundred and It looked as if I gave you one hundred thousand bucks. Do you understand me?

BATISTA: Of course, of course brother, you know that I'm not going to fuck you over thirty bucks and that's what I'm telling you, that—and the last entry you wrote down, those thirty that are kind of smudgy, that's what you wrote down thinking that you gave it to me and you didn't give it to me.

TORRES: Because I, yeah, I had been for three days, "I have thirty, I have thirty" [Voices overlap]

BATISTA: Exactly. You have been for three days telling me you have thirty, thirty- [Voices overlap]

TORRES: [U/I] the thirty, minus thirty-[Voices overlap]

BATISTA: Exactly. You've been telling me you have thirty but I haven't gone to pick them up.

TORRES: Because now I'm comparing one thing to the other, here, [U/I] over there has those ten fishes, so when I calculate things here, I have here, here the other ten. I see the other ten, do you understand me?

6

| | |
|---|---|
| BATISTA: | Uh-huh, that's what I'm talking about. [Voices overlap] |
| TORRES: | When I compare this to the money, the only thing left it is one that, that we have, do you understand me? It is one-[Voices overlap] |
| BATISTA: | Uh-huh. [Voices overlap] |
| TORRES: | -that we have still working. [Voices overlap] |
| BATISTA: | Working, exactly. Okay, my brother. You know that I always like things crystal clear and you know that I'm not going to deceive you anywhere. [Voices overlap] |
| TORRES: | I know my brother. *Sorry, sorry* because of that, dude. |
| BATISTA: | Got it. Okay. |
| TORRES: | Hey, I have good news- |

20. During the preceding conversation, TORRES and BATISTA discussed the payment of money. TORRES told BATISTA that he had paid BATISTA $100,000, when TORRES stated, "I was looking at my notebook and I saw one hundred and It looked as if I gave you one hundred thousand bucks." BATISTA responded that he had not gone to pick up $30,000, when BATISTA stated, "You've been telling me you have thirty but I haven't gone to pick them up." TORRES attempted to account for money owed to BATISTA by comparing the supply of cocaine in his possession with the money he recorded in his ledger, when TORRES stated, "Because now I'm comparing one thing to the other, here, [U/I] over there has those ten fishes, so when I calculate things here, I have here, here the other ten. I see the other ten, do you understand me?" BATISTA agreed, when he responded, "that's what I'm talking about."

21. When law enforcement executed a search warrant at TORRES' residence, on June 7, 2018, law enforcement seized multiple ledgers, some of which contain entries under the title "Barbero." The entries contained lists of money and numbers, which represented kilogram quantities of cocaine and payment for the drugs.

7

22.    On June 4, 2018, at approximately 8:45 p.m., TORRES-8251 called BATISTA-3214 (Session ID: 2198). The following conversation ensued:

BATISTA:    What's up man?

TORRES:    Dude, are you going to stop by?

BATISTA:    Of course, I am coming down what happen is got a little complicated because of the weather but I am coming down.

TORRES:    Okay, I also have something here to give you.

BATISTA:    Perfect, perfect we'll meet there—I'll be there in about an hour, you hear?

TORRES:    Okay.

BATISTA:    Forty minutes.

TORRES:    Okay.

BATISTA:    Okay.

23.    During the preceding conversation, TORRES called BATISTA to confirm a meeting for that day, when TORRES asked, "are you going to stop by?" BATISTA confirmed that he was going to TORRES' residence for the meeting, when BATISTA stated, "I am coming down." TORRES informed BATISTA that he had something to provide to BATISTA, when TORRES stated, "I also have something here to give you." BATISTA acknowledged and agreed to meet.

24.    Continuing on June 4, 2018, at approximately 9:38 p.m., BATISTA-6768 called TORRES-0780 (Session ID: 5566). The following conversation ensued:

TORRES:    What's up dude?

BATISTA:    Bro.

TORRES:    Yes.

BATISTA:    [U/I] down so… I'm about to be there to bring you the gifts for the kids.

TORRES:    Oh, okay, okay, that's fine. Let me—I was outside, okay, let me go back I'm right here in the corner. So that you bring the car up because there are

8

|||
|---|---|
| | people down there. You bring the car up with me and there is more, more—It is better there. |
| BATISTA: | [U/I] Okay. |
| TORRES: | Okay. |

25.    During the preceding conversation, BATISTA called TORRES to confirm the meeting and to confirm that he was taking a certain quantity of cocaine for TORRES, when BATISTA stated, "I'm about to be there to bring you the gifts for the kids." TORRES confirmed that it would be better to conduct the meeting in the garage connected to TORRES' apartment building, when TORRES stated, "You bring the car up with me and there is more, more—It is better there."

26.    Continuing on June 4, 2018, at approximately 9:41 p.m., law enforcement observed BATISTA arrive at TORRES' residence in a 2018 Chevrolet Suburban. Law enforcement observed the Suburban make contact with TORRES, who was driving a Dodge Charger. BATISTA then followed TORRES into the secured parking garage connected to TORRES' residence. At approximately 10:07 p.m., law enforcement observed BATISTA's Suburban leave the area.

27.    According to TORRES, BATISTA had several duffel bags in his Suburban. BATISTA grabbed one for TORRES and asked TORRES if TORRES wanted another 30, which was a reference to 30 kilograms of cocaine. TORRES refused and only took one duffel bag, which contained approximately 29 kilograms of cocaine. According to TORRES, the 23 kilograms that law enforcement found in TORRES' apartment were supplied by BATISTA during this transaction on June 4, 2018.

### e. *Interceptions Involving CABRERA*

28.    On June 1, 2018, at approximately 8:02 p.m., CABRERA-9596 called TORRES-8251 (Session ID: 1970). The following conversation ensued:

TORRES:     Talk to me, dude.

CABRERRA:   [UI].

TORRES:     Talk to me, dude.

CABRERRA:   I already talked with him and he says that it's alright, that how long more or less.

TORRES:     Dude, what can I say, *brother*. The thing—the thing is moving well.

CABRERRA:   Let's see so I can make some money because I'm slow right now, I don't have anything. Right now I'm working with these people. That helps me for the rent.

TORRES:     [Laughs]

CABRERRA:   You know how it goes.

TORRES:     Okay, but don't bring too much, just bring two.

CABRERRA:   No, there's only--only four that's there. I'll keep two at my house if you want.

TORRES:     Okay, bring it man, okay.

CABRERRA:   Okay, what can I say? Let's help each other.

TORRES:     Tell the man to give you about three or four days. Forget it don't worry about that.

CABRERRA:   Alright, okay, dude.

29.     During the preceding conversation, CABRERA called TORRES to inquire about TORRES' status in selling cocaine, when CABRERA stated, "I already talked with him and he says that it's alright, that how long more or less." TORRES responded that his business was going well, when TORRES stated, "The thing—the thing is moving well." TORRES told CABRERA to bring more cocaine, when TORRES stated, "just bring two," which was a reference to two kilograms of cocaine. CABRERA told TORRES that he (CABRERA) had four kilograms of cocaine, when CABRERA stated, "No, there's only--only four that's there. I'll keep two at my house if you want." TORRES asked CABRERA for approximately three to four days to sell the

cocaine, when TORRES stated, "Tell the man to give you about three or four days." CABRERA agreed.

30. According to TORRES, CABRERA brought the four kilograms of cocaine, not two. TORRES further explained that CABRERA was selling each kilogram for $26,500. TORRES stated that he gave CABRERA $45,000 up front and paid the rest shortly thereafter.

### f. Flight

31. On June 24, 2018, ten days after TORRES was indicted, BATISTA traveled on a one-way ticket to the Dominican Republic. On August 4, 2019, BATISTA returned to Miami. On August 11, 2019, BATISTA purchased a one-way ticket back to the Dominican Republic on a flight that is scheduled to depart on August 14, 2019.

### III. CONCLUSION

32. Based on my training and experience, and as further supported by the facts in this affidavit, I respectfully submit that there is probable cause to believe that from February 9, 2016, to June 7, 2018, MARTIN BATISTA, a/k/a "El Barbero," a/k/a "Sandy," and LUIS MINIEL FIGUEREO CABRERA, a/k/a "Luisito," Defendants did commit conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1) and 846.

**FURTHER AFFIANT SAYETH NAUGHT.**

Det. Steven Corley, TFO
Bureau of Alcohol Tobacco Firearms and Explosives

Sworn and subscribed before me
this ___ day of August 2019, in Miami, Florida.

HONORABLE LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

11